UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDA J. THOMPON,<br>    Plaintiff<br><br>    v.<br><br>ILLINOIS CENTRAL RAILROAD COMPANY,<br>    Defendant | No. 24 CV 13367<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Rhonda Thompson,[1] sues her current employer, the defendant Illinois Central Railroad Company ("ICRC"), under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. She brings claims of discrimination based on her sex (Count I), her race (Count II), her color (Count III), and her age (Count IV), as well as unlawful retaliation (Count V), and harassment based on her sex and age (Count VI). (R. 4.)[2] The defendant moved to dismiss all claims. (R. 22.) For the reasons that follow, the defendant's motion to dismiss is granted as to Count V on the ADEA retaliation claim and Count VI in its entirety, and denied as to Counts I through IV and Count V's Title VII retaliation claim.

---

[1] Because the last name in the case caption differs from the one in the pleadings, the Court uses the name provided in the plaintiff's pleadings. The Court also notes that Thompson filed a separate case against her unions, 24-cv-13368.

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

The facts below are taken from the complaint and are accepted as true for the purpose of resolving the motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Thompson is a Polish-Caucasian, light-skinned woman, over forty years of age. (R. 4 ¶ 12.) She was hired by ICRC in 1991 and is currently employed as a Class B Backhoe Operator. (*Id.* ¶¶ 12–13.) In that role, Thompson maintains and repairs tracks throughout Illinois. (*Id.* ¶¶ 13–14.) Thompson alleges that despite her seniority and training, she was denied overtime opportunities and special project assignments; she also alleges that she was assigned faulty equipment. (*Id.* ¶¶ 20, 24, 25, 27, 31–35, 92.) Those opportunities went to "Hispanic males younger than" Thompson. (*Id.* ¶¶ 22–24, 28, 34–35.) According to Thompson, she and other women did not have access to bathrooms on some job sites and were subjected to "dehumanizing 'jokes'" and "abusive language," fostered by their supervisor, Jose Gutierrez. (*Id.* ¶¶ 17, 89, 93.) Thompson also asserts that as of today, she is being paid less than her male counterparts. (*Id.* ¶ 36.)

In October 2020, Thompson filed a grievance with ICRC about being passed over for overtime, which was denied. (*Id.* ¶¶ 29–30.) And in April 2021, she filed her

---

[3] The Court must note that it is troubled by the plaintiff's response to this motion. There are numerous misrepresentations made in citing both the record and the case law. (R. 25.) For example, the response misstates holdings of some cited cases, quotes non-existent language, and represents a Tenth Circuit case as that of the Seventh Circuit. (*See* R. 25 at 2–5 (*Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 834 (10th Cir. 1996)).) Further, the plaintiff purportedly quotes her own pleadings, but the quoted language is either altered or nowhere to be found. (*Id.* at 4, 6, 7.) The Court reminds the plaintiff's attorney of her Rule 11 obligations. *See generally* Fed. R. Civ. P. 11(b). The Court further reminds the plaintiff's attorney that violations of Rule 11 may lead to sanctions. Fed. R. Civ. P. 11(c).

first *pro se* complaint with the Equal Employment Opportunity Commission ("EEOC"). (R. 4-1.)[4] In that charge, Thompson checked the boxes for discrimination based on race, sex, color, age, and retaliation, alleging that she was "subjected to different terms and conditions of employment than a younger Hispanic male employee, including but not limited to, assignment of overtime work and special projects[,] and safe work equipment." (*Id.* at 1.) She added that she "complained to [ICRC] and no action was taken." (*Id.*) According to Thompson, sometime after filing this charge with the EEOC, complaining to Human Resources, her supervisor, and filing internal complaints, ICRC retaliated by subjecting Thompson to "unjustified suspension, los[s] of overtime pay, and limiting her access to safe working equipment and washrooms throughout her workday." (R. 4 ¶¶ 72–74.)

In February 2024, Thompson, now represented by an attorney, filed a subsequent charge with the EEOC, alleging continued sex discrimination, harassment, and retaliation under Title VII. (R. 4-2.) Thompson received a right-to-sue letter from the EEOC for the first charge on September 30, 2024, (R. 4-3), and timely filed this lawsuit, (R. 1). She then received a second right-to-sue letter for the second charge on February 27, 2025, (R. 4-4), and amended her complaint, (R. 4).

ICRC now moves to dismiss all discrimination claims (Counts I–IV), arguing that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, precludes them; it moves to dismiss the retaliation and harassment claims (Counts V–VI) for failure to exhaust administrative remedies, a condition precedent to bringing these claims in court; and

---

[4] Documents attached to the complaint are made part of the complaint for all purposes. Fed. R. Civ. P. 10(c).

3

in the alternative, moves to dismiss all counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (R. 22.)

## LEGAL STANDARD

To defeat a Rule 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621–22 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). But the Court does not have to accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## ANALYSIS

### I. DISCRIMINATION CLAIMS (COUNTS I–IV)

#### A. Jurisdiction Over Discrimination Claims

First, ICRC argues that Thompson's discrimination claims (Counts I–IV) should be dismissed for lack of subject matter jurisdiction.[5] (R. 22 at 9.) Specifically,

---

[5] The Seventh Circuit has questioned whether RLA preclusion "deprives federal courts of subject matter jurisdiction rather than simply defeat[ing] the claim." *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014). That said, the Seventh Circuit thus far has declined to address the issue. *Id.* ("When a future case requires a decision on whether the RLA's arbitration provision is jurisdictional, we will need to consider carefully the opposing positions recently taken on the issue by the D.C. and Sixth Circuits."). Similarly here, the Court "need not and do[es] not decide the issue in this case." *Id.*

4

ICRC asserts that Thompson's allegations—that she "was passed over for overtime, denied conditions to which she was entitled based on her seniority with IC[RC], such as more favorable assignments and equipment"—are premised on ICRC's "purported violation of the [collective bargaining agreement ("CBA")], and therefore are minor disputes that require dismissal" under the RLA. (*Id.* at 7.) The Court disagrees.

The RLA "sets up a mandatory arbitral mechanism to handle [minor] disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153 First (i)). "[M]inor disputes are those 'grounded in' a [CBA]." *Carlson*, 758 F.3d at 831–32 (quoting *Haw. Airlines*, 512 U.S. at 256)).[6] Not all claims are "grounded" in a CBA. "[A] claim based on a right that is 'independent' of a [CBA] is not subject to mandatory arbitration, and a claim is independent if it cannot be 'conclusively resolved' by interpreting the [CBA]." *Id.* (quoting *Haw. Airlines*, 512 U.S. at 256). That does not mean, however, that independent claims cannot touch upon a CBA whatsoever; "a claim is not barred simply because 'the action challenged by the plaintiff is arguably justified by the terms of the CBA.'" *Id.* (quoting *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001)). Thus, "if the CBA is merely relevant, but not dispositive, to the claim, then judicial resolution is not precluded." *Hoffstead v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 132 F.4th 503, 514 (7th Cir. 2025).

---

[6] There are also procedures for resolving "major" disputes, but that is not at issue here.

5

In arguing that the RLA precludes Counts I–IV, ICRC misunderstands this distinction. In ICRC's view, the "Court cannot determine whether [Thompson] was unlawfully denied overtime, special projects, assignments, and the host of other contractual benefits she claims she was discriminatorily denied without interpreting her CBA." (R. 22 at 8.) In support of its reasoning, ICRC relies on *Brown*, where the Seventh Circuit held that the RLA precluded claims under the Americans with Disabilities Act ("ADA") because the accommodation sought "would violate the seniority provisions of the CBA," thus making it "unreasonable as a matter of law and not mandated by the ADA." 254 F.3d at 661. ICRC contends that, similarly, Thompson's allegations here "hinge on her seniority rights" under her CBA. (R. 22 at 9.) But *Brown* "stress[ed] the limited scope of [its] holding. A claim brought under an independent federal statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of the CBA." 254 F.3d at 668. Here, unlike in *Brown*, Thompson's allegations of discrimination do not rise or fall based on the meaning of any particular CBA provision. Nor does she cite to any in her complaint. (*See generally* R. 4.) The CBA may support her claims, but the claims' success does not "depend[ ] entirely on the agreement's meaning." *Carlson*, 758 F.3d at 832. Accepting ICRC's position would effectively shield discriminatory acts involving overtime and work assignments from Title VII and ADEA scrutiny whenever those terms appear in a CBA.

*Carlson* is also instructive. There, the defendant argued that the RLA precluded a Title VII claim because the railroad "acted pursuant" to the CBA "in

refusing to reinstate" the plaintiff, as opposed to doing so for "discriminatory or retaliatory reasons." *Carlson*, 758 F.3d at 832. The court rejected that argument because even if the plaintiff "did not have the qualifications specified in the [CBA], she would still have viable Title VII claims if . . . the same potentially disqualifying attributes have been overlooked for men." *Id.* at 833. The same reasoning applies here. Even if ICRC's conduct was, in their view, "motivated by compliance with the terms of the CBA" rather than a discriminatory purpose, (R. 26 at 5), Thompson could still pursue her Title VII and ADEA claims if the CBA terms were violated to treat younger people or those of a different race, color, or sex more favorably. Again, "[c]laims are not precluded 'just because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense.'" *Carlson*, 758 F.3d at 832 (quoting *Brown*, 254 F.3d at 668). And even if the CBA included its own anti-discrimination provision, "Title VII [claims] could [still] proceed in federal court" because "a claim under an independent law covering the same subject matter is not precluded." *Id.* at 833–34. Thus, the RLA does not preclude Thompson's discrimination claims.

### B. Whether Thompson Stated Discrimination Claims

Because the Court has jurisdiction over Counts I–IV, it now considers whether Thompson has successfully stated a claim. As mentioned, Thompson's discrimination claims are brought under both Title VII and the ADEA; "[t]he test for ADEA discrimination is 'virtually identical' to the framework for Title VII discrimination." *Little v. Ill. Dep't of Pub. Health*, No. 16 C 10377, 2017 WL 5903835, at *7 (N.D. Ill. Nov. 30, 2017) (quoting *Stone v. Brd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 945

(N.D. Ill. 2014)). "A complaint alleging . . . discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected characteristic.]'" *Carlson*, 758 F.3d at 827 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). An adverse employment action must have caused the "plaintiff a significant change in employment status, [which] often involves the employee's current wealth, her career prospects, working conditions, etc." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 n.3 (7th Cir. 2015).

ICRC argues that Thompson's discrimination claims fail because she "alleged no adverse action," "fail[ed] to plead a causal connection" between the adverse action and protected characteristic, and "ple[d] no facts showing similarly-situated employees were treated differently." (R. 22 at 12–13.) The latter two arguments are irrelevant at the motion to dismiss stage; they correspond to the evidentiary standard for discrimination cases, which need not be pled. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337–38 (7th Cir. 2024) (explaining that at the motion to dismiss stage, in a discrimination case, it is enough to say "I was turned down for a job because of my [protected characteristic]"). All Thompson must plead that an adverse action took place as a result of her protected characteristic. *See, e.g., Garrett v. Fam. First Ctr. of Lake Cnty.*, No. 23 C 17074, 2024 WL 1858863, at *2 (N.D. Ill. Apr. 29, 2024) ("To plausibly allege sex discrimination under Title VII, a plaintiff must demonstrate that her employer took an adverse action against the plaintiff on the basis of her sex."); *King v. Elementary Sch. Dist. #159*, 17 C 4637, 2018 WL 1734645,

8

at *5 (N.D. Ill. Apr. 10, 2018) ("To state a claim for age discrimination under the ADEA, a plaintiff need only allege she suffered a specified alleged adverse employment action on the basis of her age.").

Thompson asserts that "[d]enying overtime, equipment, and assignments linked to seniority constitutes an adverse action[.]" (R 25 at 5.) Loss of overtime, for example, can be a materially adverse action under certain circumstances. *See Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) (holding that "[d]epending on the type of work, overtime can be a significant and recurring part of an employee's total earnings similar to a recurring raise or it could be insignificant and nonrecurring like a discretionary bonus."). Denial of opportunities that impacted Thompson's career advancement could also be adverse, particularly if it led to a loss in potential overtime pay. *See id.* Given that "the 'pleading standard for simple claims of . . . discrimination' is 'minimal,'" at this stage, Thompson has sufficiently pled that there was an adverse action. *Garrett*, 2024 WL 1858863, at *2. Therefore, the motion to dismiss as to Counts I through IV is denied.

## II. RETALIATION CLAIM (COUNT V)

### A. Administrative Exhaustion

ICRC also moves to dismiss Thompson's retaliation claim, Count V, first arguing that it was not administratively exhausted. (R. 22 at 9, 13.) Although in its argument ICRC refers to Count V as both a Title VII and an ADEA claim, it is unclear to the Court whether this claim actually includes ADEA retaliation because the complaint only references Title VII. (R. 4 ¶¶ 71, 74–76.) Thompson's response to the motion does not clear up this discrepancy; she simply does not address it. (R. 25 at 4);

9

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Thompson pleads that she "complained of race, age, gender, and color discrimination" and that ICRC continues to discriminate against her "on the basis of gender, race, age, and/or color." (*Id.* ¶¶ 72–73.) But Thompson does not allege that any retaliation occurred in violation of the ADEA. *Id.* ¶ 74 ("[The d]efendant[ ] took adverse actions against [the p]laintiff in retaliation for engaging in protected activity, in violation of *Title VII*") (emphasis added)).) To the extent one was asserted, Thompson's ADEA retaliation claim is dismissed.

"Before bringing a Title VII claim, a plaintiff must first exhaust h[er] administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Thompson followed these steps. (R. 4 ¶¶ 5–11.) In addition, a plaintiff can only bring claims included in her EEOC charge or those "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). That requirement is satisfied when (1) "there is a reasonable relationship between the allegations in the charge and the claims in the complaint," and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 501. But a "Title VII plaintiff need not include

10

in her charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Huri*, 804 F.3d at 831.

ICRC argues that Thompson "has done nothing other than check a box for retaliation with no accompanying facts, which is insufficient to exhaust her retaliation claims." (R. 22 at 10–11.) Indeed, checking the retaliation box on the EEOC form alone is insufficient to exhaust her administrative remedies. *See, e.g.*, *Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *10 (N.D. Ill. Mar. 26, 2025) (dismissing a retaliation claim and holding that checking "the 'Retaliation' box . . . alone is insufficient to survive exhaustion"); *Herr v. City of Chicago*, 447 F. Supp. 2d 915, 920 (N.D. Ill. 2006) (reasoning in dismissing a retaliation claim that "[c]hecking a box marked 'retaliation,' without providing any supporting facts, does not satisfy the requirement of filing a retaliation charge with the EEOC").

But, in her second charge, Thompson both checked the retaliation box and stated that ICRC "issued her corrective action where it was not warranted." (R. 4-2.) The complaint similarly alleges that after Thompson "engag[ed] in protected activity," ICRC subjected her to "unjustified suspensions." (R. 4 ¶ 74.) "Courts review the scope of an EEOC charge liberally." *Huri*, 804 F. 3d at 831. Here, reading the allegations in the light most favorable to Thompson, the Court can infer that a relationship exists between the corrective action allegation in the charge and the unjustified suspensions allegation in the complaint. Suspension is a form of corrective action. Further, this claim could "grow out of an EEOC investigation" because a

11

follow-up question regarding why corrective action was issued would have provided the necessary information to the EEOC. *Cheek*, 31 F.3d at 500.

In addition, ICRC's argument that there was "no way [it] could have divined that [Thompson's second charge] was claiming retaliation related to [the first c]harge filed nearly four years later is unavailing. (R. 26 at 11.) The "Seventh Circuit follows the rule that a separate administrative charge is not a prerequisite to a lawsuit complaining about retaliation for filing an earlier charge; in other words, a retaliation claim can be raised for the first time in a federal lawsuit." *Victor v. Vill. of Hoffman Estates*, No. 13 C 00921, 2016 WL 232420, at *10 (N.D. Ill. Jan. 20, 2016). In her complaint, Thompson alleges that "she complained of . . . discrimination to . . . the EEOC." (R. 4 ¶ 72.) And she alleges that despite this, ICRC "continued to discriminate against [her.]" (*Id.* ¶ 73.) Thompson did not need to bring a separate charge regarding alleged retaliation related to her first charge. Thus, Thompson exhausted her administrative remedies for her Title VII retaliation claim.

### B. Failure to State a Claim

In the alternative, ICRC argues that Thompson failed to state a claim for retaliation. (R. 22 at 13.) The Court disagrees. A plaintiff pleading a retaliation claim under Title VII "must allege that she engaged in a statutorily protected activity and was subjected to adverse employment action as a result of that activity, though she need not use those terms, of course." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). "The protected activity must be specifically identified." *Carlson*, 758 F.3d at 828. Thompson did so by pleading that she "complained of race, age, gender, and color discrimination to her supervisor, human resources, her union, and

outside agencies including the EEOC." (R. 4 ¶ 72.) Those are protected activities. *See, e.g.*, *Brown v. Chi. Transit Auth.*, No. 17 C 08473, 2020 WL 777296, at *11 (N.D. Ill. Feb. 14, 2020) ("[F]iling an internal complaint or charge with the EEOC is a quintessential protected activity.").

Next, contrary to ICRC's assertion, Thompson's "pleading need not prove a causal link between the protected activity and the adverse employment action" at this stage. *Renken v. Ill. State Toll Highway Auth.*, 683 F. Supp. 3d 775, 780 (N.D. Ill. 2023). And while "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible," there can be "no bright-line timing rule . . . to decide whether a retaliation claim is plausible." *Carlson*, 758 F.3d at 828–29. This is especially true at the motion to dismiss stage. *Renken*, 683 F. Supp. 3d at 781 (the "Court will not deny [the plaintiff] an opportunity to seek further evidence to support her retaliation allegations in this case based merely on a potential" time gap between the complaint and adverse action). It is enough for the complaint to plausibly allege, but not necessarily prove, a causal link.

The Court first notes that ICRC's alleged failure to act in response to Thompson's concerns about ongoing discrimination is not a retaliatory adverse action; it is inaction. (R. 22 at 10); *see also Huppert v. Potter*, 232 F. App'x 576, 581 (7th Cir. 2007) (unpub.) (holding that "the adverse actions [the plaintiff] describes are the identical actions that caused him to file the union grievances in the first place" and thus are not materially adverse actions for the purposes of his retaliation claim").

However, outside of alleging the same actions that caused her to file the complaint, Thompson also alleges that ICRC took an adverse action by "subjecting her to unjustified suspensions." (R. 4 ¶ 74.) A "disciplinary suspension [ ] suffered [is] enough to constitute an adverse employment action for purposes of Title VII." *Russell v. Bd. of Trs.*, 243 F.3d 336, 339 (7th Cir. 2001). It is true that Thompson "provides no detail or context whatsoever for these allegations, providing no timeline, frequency of these alleged actions, or even who the decision maker was." (R. 22 at 14.) But the case has "not yet proceeded to discovery, and the distinction between a plaintiff facing Rule 12(b)(6) dismissal and one facing summary judgment matters." *Renken*, 683 F. Supp. 3d at 781. To survive a motion to dismiss, Thompson has to state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678. At this time, she has done so for her retaliation claim.

### III.   HARASSMENT (COUNT VI)

#### A.   Administrative Exhaustion

ICRC further asserts that Thompson's harassment claims based on age and gender, Count VI, are not exhausted because she did not allege harassment anywhere in her first charge and used the word "harassment" in her second charge without any supporting facts. (R. 22 at 11.) The Court agrees that the age harassment[7] claim was not exhausted but disagrees on the sex harassment claim.

---

[7] For the purposes of this analysis, the terms "harassment" and "hostile work environment" are "the same interchangeable phrase[s] frequently used by [the] Court." *Huri*, 804 F.3d at 832.

The first charge does not even mention the words "harassment" or "hostile work environment," nor does it provide any facts that support the allegation of harassment. (*See generally* R. 4-1.) For the second charge, failing to check the "age" box on an EEOC charge is not a "fatal error." *Jenkins*, 538 F.2d at 168–69. Yet it is not only about checking the box; Thompson's second charge does not implicate age at all, only sex. (R. 4-2.) Thus, Thompson failed to exhaust her administrative remedies as to her age-related harassment claim.

Thompson's sex harassment claim is different. The second charge both implicates sex and unlike the first charge, states that "she has been harassed" and the "harassment is ongoing in nature." (R. 4-2.) And ICRC's position that Thompson's use of the word "harassment" without any supporting facts is "insufficient to exhaust [her] sex harassment claim" is contrary to Seventh Circuit precedent. (R. 22 at 11.) *Huri* is instructive. There, the plaintiff's first charge with the EEOC read: "I have been subjected to harassment because of my religion and national origin. I filed internal complaints [and] the harassment continued." *Huri*, 804 F.3d at 832. The Seventh Circuit held that it was enough to put the employer on notice. *Id.* Here, Thompson similarly charged that "she has been harassed" and that ICRC "does not treat male employees in the same manner." (R. 4-2.) Her second charge with the EEOC is precisely within the parameters of *Huri*, and the Court finds that Thompson's "Title VII [harassment] allegations are reasonably related to the contents of [her second] EEOC charge." 804 F.3d at 832.

### B.     Failure to State a Claim

That said, though Thompson administratively exhausted her sex harassment claim, she did not sufficiently plead it here. To state a sex harassment claim under Title VII, Thompson must plead that "1) she was subjected to unwelcome harassment, 2) the harassment was based on her sex, 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and 4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). "[T]he alleged harassment must be both subjectively and objectively so severe or pervasive that it alters the conditions of the plaintiff's employment." *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010).

Thompson alleges that she was excluded from "weekly team meetings," given assignments "that are dangerous," and subjected to "unjustified disciplinary actions[,] including multiple suspensions" by her male supervisor. (R. 4 ¶¶ 90–92.) She further alleges that she and other women were subjected to "dehumanizing 'jokes'" and that she "complained about this . . . conduct . . . to various leadership members." (*Id.* ¶¶ 89, 94.) While these allegations meet the first prong of the standard—that she was subject to unwelcome harassment, *see Hrowbowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004) (holding that a reasonable jury could find the alleged harassment unwelcome because the plaintiff "complained to managers . . . about racial language and jokes in the workplace"), not all of this conduct is tied to her sex. Indeed, only the "jokes" could be said to meet the second

16

prong—that the harassment was based on her sex. (R. 4 ¶ 89 ("[T]he Track Supervisor, Jose Gutierrez . . . signal[ed] . . . that it was acceptable and even humorous to subject women/females such as [the p]laintiff to dehumanizing 'jokes.'").) Other than the jokes, Thompson's general allegation that her manager "subjected [her] to a course of hostile, abusive and harassing conduct based solely upon [her] gender" is conclusory. This failure to link the other alleged conduct to Thompson's sex does not pass muster here.

The question now is whether Thompson adequately alleged the other elements of a sex harassment claim with respect to the jokes; she did not. It is clear that Thompson subjectively found the "jokes" severe because, again, she "complained about this . . . conduct . . . to various leadership members." (R. 4 ¶ 94.) However, she pled no facts to show that the "jokes" were objectively offensive. "The 'occasional vulgar banter, tinged with sexual innuendo of coarse or brutish workers' generally does not create a work environment that a reasonable person would find intolerable." *Kampmier*, 472 F.3d at 941 (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

In her pleadings, Thompson alleges nothing regarding the nature, frequency, or severity of these "jokes" besides characterizing them as "dehumanizing" and "abusive." (R. 4 ¶¶ 89, 93.) Because the objective pervasiveness of harassment "turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

17

performance,'" some facts are needed to make the claim plausible. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Courts in this district have found that the frequency and the severity of conduct can make or break a harassment claim. *See, e.g., Brooks v. Elgin Die Mold Co.*, No. 24 C 13257, 2025 WL 1348568, at *2 (N.D. Ill. May 8, 2025) (dismissing a harassment claim because "[w]hile the alleged behavior [of attempting to grab the plaintiff's penis] is troubling, the sole occurrence . . . is not sufficiently severe or pervasive"); *Durkin v. City of Chicago*, 199 F. Supp. 2d 836, 850 (N.D. Ill. 2002) (holding that a single incident of sexual exposure is not severe or pervasive because "single incidents of harassment [that] may be sufficient to create a hostile environment . . . generally involve threatening physical contact.", *aff'd* 341 F.3d 606 (7th Cir. 2003). Drawing all reasonable inferences in Thompson's favor, the Court finds that there are not enough facts pled here for this claim to be plausible. For that reason, Thompson's sex harassment claim is dismissed.

## CONCLUSION

The defendant's motion to dismiss [22] is granted as to Count V's ADEA retaliation claim and Count VI in its entirety, and denied as to Counts I–IV and Count V's Title VII retaliation claim. The defendant shall answer the complaint on or before September 23, 2025.

Date: September 2, 2025

JEREMY C. DANIEL
United States District Judge